## Laux Appeal

*Louis Cohen* and *Frank S. Moser*, for appellant.
*Daniel W. Kearney*, contra.

PER CURIAM, March 19, 1951.—This action is an appeal by Charles E. Laux from the action of the Police Civil Service Commission of the Borough of Shamokin suspending him as a member of the police force of that borough for a period of 30 days without pay dating from December 16, 1949. This appeal is taken under the authority of section 21 of the Act of June 5, 1941, P. L. 84, 53 PS §351.21.

The appeal was allowed by this court, sitting en banc, on January 12, 1950, and January 30, 1950, was fixed as the date for the hearing of the appeal. On the same date appellant presented a written motion to quash the action of the Police Civil Service Commission of the Borough of Shamokin in finding appellant guilty as charged and directing his suspension. The court en banc directed that a rule issue upon the Police Civil Service Commission of the borough to show cause why their action should not be quashed, which rule was made returnable on January 30, 1950, at which time the motion to quash was to be considered by the court.

The reasons assigned by appellant in support of his motion to quash the action of the civil service commission are that the action of the Council of the Bor-

ough of Shamokin suspending him on December 6, 1949, is illegal and void; that the civil service commission has no jurisdiction and that there was a failure to comply with the requirements of the Civil Service Law provided in such cases. There is no factual dispute concerning the procedural steps taken by appellant, Borough Council and the Police Civil Service Commission.

At a regular meeting of the Council of the Borough of Shamokin, one of the members presented a communication which he had received from William Waldroff complaining about the conduct of Police Officer Laux. After the complaint was presented to council on a motion duly made, seconded and carried, Officer Laux was suspended until a hearing by the police commission. The communication signed by Waldroff was given to Chief Burgess, who in turn gave it to the secretary of council. That evening; after the regular meeting of council, the Chief of Police verbally notified the officer of the action taken by council.

On December 12, 1949, Laux reported to the Chief of Police for duty stating that no copy of any charges against him had been served upon him, whereupon the Chief of Police and the officer reported to the Chief Burgess, who stated that council had suspended him and he in turn referred Laux to the president of the council. The Chief of Police inquired of the president of the council and was informed that Laux had been suspended.

On December 13, 1949, Laux addressed a letter to the Police Civil Service Commission that he had been informed by the Chief of Police on December 6, 1949, that he had been suspended from duty and that he had not received a copy of any charges made against him and requested a copy of the charges filed and also a hearing before the Police Civil Service Commission in accordance with the Civil Service Law.

On December 16, 1949, council held an adjourned meeting at which time the secretary read the letter which Officer Laux had addressed to the Police Civil Service Commission. The following motion was made, seconded and carried:

"That Patrolman Laux be suspended without pay for inefficiency and conduct unbecoming an officer, and that he be furnished with a copy of the complaint filed against him, and that the Police Commission give him a hearing within ten (10) days, and also that he be notified in writing."

Under date of December 16, 1949, the secretary of council addressed a letter to Laux informing him that council had taken the following action at its adjourned meeting: "That Patrolman Charles Laux be suspended without pay for inefficiency and conduct unbecoming an officer." He also gave the officer a copy of the charges filed against him which was the communication signed by William Waldroff.

On December 20, 1949, Laux addressed a letter to the Police Civil Service Commission stating that he was not guilty of any inefficiency or conduct unbecoming an officer and that he desired to have a hearing before the commission without waiving strict compliance with the statutory requirements involved in his case. A hearing was held before the Police Civil Service Commission on December 27, 1949, at which time an answer was filed by Laux in which he denied the charges and contended that the action of council in suspending him was illegal, unlawful and contrary to law. Testimony was taken and witnesses heard by the commission.

On January 3, 1950, the Police Civil Service Commission addressed a communication to the mayor and members of Council of the City of Shamokin informing them that they have found Charles Laux guilty as charged and suspended him without pay from De-

cember 16, 1949, for a period of 30 days. This communication from the Police Civil Service Commission was presented to City Council and on January 4, 1950, the City Council took action sustaining the report of the Police Civil Service Commission. The Borough of Shamokin became a third class city on January 1, 1950.

It is undisputed that Officer Laux received his pay up to and including December 15, 1949, although council had taken action suspending him on December 6, 1949.

The Police Civil Service Commission of the Borough of Shamokin consisted of three members, one of which, S. Fred Badman, was a member of council. The clerk or secretary of the commission was John C. Wary, who is also secretary of the council. It is undisputed that the police force of the Borough of Shamokin consisted of more than three members, and the provisions of the Police Civil Service Act of June 5, 1941, P. L. 84, are applicable in the borough.

Section 1 of the Act of June 5, 1941, P. L. 84, 53 PS §351.1 provides, inter alia, as follows:

"The provisions of this act and of any amendments or supplements thereto shall be in effect as to boroughs, only while sections 1125, 1127 and 1128 as now contained in 'The General Borough Act' are in force, subject, however, to the method of appointment and removal hereinafter provided.

"No person shall hereafter be suspended, removed or reduced in rank as a paid employe in any police force of any municipality except in accordance with the provisions of this act."

In Bragdon et al. v. Ries et al., 346 Pa. 10, it was held that the Act of 1941, supra, does not deprive council of the power to appoint and remove, nor the burgess of the power to suspend, but merely prescribes and limits the conditions under which these powers may be exercised.

The Act of 1941, in conjunction with the General Borough Act, prescribes the procedure which must be followed in dismissing police officers from service in a borough: Dauber's Case, 151 Pa. Superior Ct. 293.

Section 1125 of the General Borough Act of May 4, 1927, P. L. 519, as amended, provides in part: "Borough councils may appoint and remove one or more suitable persons, citizens of this Commonwealth, as borough policemen, . . ." While the aforementioned section mentions the appointment and removal of borough policemen, suspension and reduction in rank are inherent in the power to appoint and remove. Since the enactment of the Act of 1941, supra, such action by council would, however, be subject to review by the Police Civil Service Commission upon application by the accused: Goehring's Appeal, 57 D. & C. 256, 263.

There is no testimony in the record that appellant was notified in any way or in any manner to the effect that charges would be preferred against him at the regular meeting of Borough Council held on December 6, 1949. The action of council taken at that meeting suspending the officer until a hearing by the police commission was not in accordance with the provisions of the act of assembly providing for the establishment of a Police Civil Service Commission and for the appointment, removal, suspension and reduction in rank of borough policemen.

Section 20 of the Act of June 5, 1941, P. L. 84, 53 PS §351.20, provides that no person employed in any police department shall be suspended, removed or reduced in rank, except for certain enumerated reasons. Section 21 of the same act, 53 PS §351.21, provides that if the person sought to be suspended, removed or reduced in rank shall demand a hearing by the commission, the demand shall be made to the commission. The action taken by the Borough Council on December 6, 1949, simply provided for the suspension of the

officer until a hearing by the police commission. If council was going to suspend the officer at all, it should have suspended him for a definite period of time and if the officer felt aggrieved by the action of council, then it was incumbent upon him to demand a hearing before the commission. Furthermore, the officer could only be dismissed in accordance with section 20 of the act, 53 PS §351.20, for an offense specifically set forth therein.

On December 6, 1949, no reason was given for the suspension of the police officer and the police officer did not receive a statement of the charges against him until following the council meeting held on December 16, 1949. The fact that the officer had addressed a communication to the Police Civil Service Commission requesting a copy of the charges against him and a hearing before the Police Civil Service Commission was probably the reason for council taking action at its adjourned meeting on December 16, 1949. Following the second meeting, council did notify the officer that it had suspended him for inefficiency and conduct unbecoming an officer and gave him a copy of the charges filed against him which was a statement signed by William Waldroff. The action taken by council further provided that the police commission give him a hearing within 10 days. It will be noted that even the second suspension did not specify the period during which the suspension was to be in effect.

Clearly the action of the council on December 6, 1949, in suspending the officer pending a hearing by the police commission was not in accordance with the act of assembly. No doubt the action taken at its meeting on December 16th was for the purpose of curing the defect. Between the dates of the two council meetings there was ample time for council to notify the patrolman as to the nature of the charges against him. It was not until after the second meeting when

council again suspended the officer without rescinding its prior action that the officer was notified as to the charges against him in compliance with section 20 of the Police Civil Service Act.

Council has no right, under the law, to refer the matter to the Police Civil Service Commission on its own motion, in the first instance. The provisions of the act clearly state that the accused should have that privilege. It is true that the patrolman did address a letter to the Police Civil Service Commission, dated December 20, 1949, in which he requested a hearing by the Police Civil Service Commission of the Borough of Shamokin in accordance with the Civil Service Law and in the same letter did state that by making this request he was not waiving strict compliance with the statutory procedure provided by law in such cases. It is likewise true that on December 13, 1949, the patrolman addressed a letter to the Police Civil Service Commission, in which he requested a copy of any charges filed against him and also a hearing in accordance with the Civil Service Law. It might be argued that the fact that he appeared before the commission and submitted his case to it, may be regarded as a waiver of strict compliance with the statutory procedure: Cain v. Stucker, 159 Pa. Superior Ct. 466, 470. However, he did appear before the commission under protest and was very careful in both his request of December 20th and his answer filed before the commission to state that he was not waiving strict compliance with the statutory requirements of the Civil Service Law. Even though we would consider the appearance of the patrolman as a waiver of the manner in which the case may be brought before the Police Civil Service Commission, nevertheless, there is a fatal defect inasmuch as council did not specify the period of suspension.

Council should have taken definite action, after consideration of the charges lodged against the patrolman, suspending the patrolman for a definite period of time and should have also furnished the officer with a copy of the charges lodged against him. While the officer received his pay for the period that he was under the first suspension from December 6th to December 16th, nevertheless, that action in suspending him is still on the minutes of Borough Council and may at some future time be detrimental to the record of appellant as a police officer. Council did not afford an opportunity to the patrolman to appear before it or its police committee nor did he know what the charges against him were until after council had acted a second time on the charges brought to its attention by one of its members. Inadvertently perhaps, council took it upon itself to have the Police Civil Service Commission act upon the matter and have it fix the period of suspension. It was incumbent upon Borough Council to suspend the patrolman for a specified period of time and, upon such action, it was then the right of the patrolman to seek a hearing before the Police Civil Service Commission.

It must be borne in mind that this was not a suspension by the Chief Burgess but was action taken by council itself under its power to appoint and remove police officers as provided in the General Borough Law. Under the act the Chief Burgess has the power to suspend an officer pending action by Borough Council at its next meeting. In this case, however, Borough Council itself undertook to suspend the officer without naming the duration of the said suspension and simply referred the matter to the Police Civil Service Commission without affording the patrolman an opportunity to be heard by council or any committee thereof. Had council, at its adjourned meeting on December 16, 1949, rescinded its prior action taken at its meet-

ing on December 6, 1949, and had cleared the patrolman's record, then there may have been some basis for council to have taken the action it did on December 16th. Even though charges had been made against the patrolman in open council meeting on December 6th, the officer received no copy of the charges as provided in the Civil Service Law but was verbally notified that he was suspended.

One who comes within the provisions of the Civil Service Act of 1941, supra, can be suspended only in accordance with section 20 of that act; if suspended for cause, he is entitled to receive a statement of the charges against him; under section 21 of the act he is entitled on demand to a hearing before the commission; and these provisions of the act are mandatory. The remedy prescribed by the act is exclusive and must be strictly pursued: Scott Township Civil Service Commission Appeal, 166 Pa. Superior Ct. 486.

The procedure in this case not having been in compliance with the law, the order of suspension imposed by the Police Civil Service Commission of the Borough of Shamokin must be set aside and its action reversed, the proceedings before it quashed and appellant must be reimbursed his salary for the 30 days during which the suspension was in effect.

Our decision makes it unnecessary to pass upon or review the charges which form the basis of the suspension.

### Order

And now, to wit, March 19, 1951, appellant's motion to quash the action of the Police Civil Service Commission of the Borough of Shamokin in suspending him as a policeman of that borough without pay for a period of 30 days from December 16, 1949, is hereby allowed and the order of suspension imposed by the Police Civil Service Commission is hereby set aside

and its action reversed and the City of Shamokin (formerly Borough of Shamokin) is hereby ordered to reimburse Charles E. Laux in the sum of $201, being the amount of salary withheld from him during the period of suspension. Costs are to be paid by the City of Shamokin.